UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 23 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| LUIS ANTONIO HERNANDEZ, Petitioner, | § § § | |
| v. | § § | CIVIL ACTION NO. B-04-073 (Criminal No. B-03-172-01) |
| UNITED STATES OF AMERICA, Respondent. | § § § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Petitioner Luis Antonio Hernandez's (hereinafter Petitioner) Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Docket No. 1) and Petitioner's supplement to that motion (Docket No. 14). Along with its response the Government filed a Motion to Dismiss (Docket No. 10), which will also herein be considered. For the following reasons, the relief sought by Petitioner should be DENIED and the Government's Motion to Dismiss should be GRANTED.

### BACKGROUND

On March 1, 2003 Petitioner was arrested after an undercover investigation revealed that he was involved in the transportation and distribution of large amounts of marijuana. Petitioner pleaded guilty to possession with intent to distribute more than 100 kilograms of marijuana on May 1, 2003 and was later sentenced to 78 months imprisonment to be followed by a 5 year term of supervised release. The judgment of conviction and sentence was entered on August 13, 2003.

Petitioner then filed a pro se notice of appeal on December 12, 2003. The United States Court of Appeals for the Fifth Circuit dismissed his appeal on January 7, 2004. Petitioner timely

1

filed the motion now before the Court on April 20, 2004 and a supplement to that motion on August 4, 2004.

## ALLEGATIONS

In his initial motion Petitioner alleges that he is entitled to relief because his constitutional right to effective assistance of counsel was violated. He argues that he was deprived of effective assistance because his attorney wrongfully induced him to plead guilty by (i) misleading him as to the length of sentence he would receive, (ii) failing to conduct an appropriate investigation, and (iii) failing to provide him with copies of the discovery. Petitioner also claims that his attorney failed to file an appeal despite being instructed to do so.

In the supplement to his original motion Petitioner claims that his constitutional rights were also violated because he received a three level enhancement under the federal sentencing guidelines for his aggravating role in the offense.

## DISCUSSION

### I.   Ineffective assistance of counsel standards

The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in the case of *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence
> has two components. First, the defendant must show that counsel's
> performance was deficient. This requires showing that counsel
> made errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's errors

2

> were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994), *cert. denied*, 513 U.S. 1114 (1995). In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland v. Washington*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 231 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1035 n.1 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

The proper standard for evaluating counsel's performance under the Sixth Amendment is "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. at 687; *Bullock v. Whitley*, 53 F.3d 697, 700 (5th Cir. 1995). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. at 2067. "Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.*

Because a convicted defendant must satisfy <u>both</u> prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice under that test makes it unnecessary to

examine the other prong. *See Strickland v. Washington*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 721; *Green v. Johnson*, 116 F.3d at 1122; *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d at 210. Therefore, failure to establish that counsel's performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987), *cert. denied*, 484 U.S. 842 (1987). It is also unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d at 401; *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986), *cert. denied*, 482 U.S. 916 (1987); *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057 (1987).

In *Hill v. Lockhart*, the Supreme Court explained how the two-part[1] *Strickland* test for determining ineffective assistance of counsel should be applied in cases where a petitioner entered a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Under the interpretation of the *Strickland* test set out in *Hill*, a petitioner "must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). In order to show attorney error, a petitioner must establish that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases". *Hill*, 474 U.S. at 58-59. To satisfy the "prejudice" prong, a petitioner must affirmatively prove that "there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *Armstead*, 37 F.3d at 206. Thus mere allegations of prejudice are not sufficient. *Armstead*, 37 F.3d at 206. Furthermore, the

---

[1] (1) deficient performance and (2) actual prejudice. *Strickland*, 466 U.S. 668.

4

Court's determination of prejudice must take into account what the likely outcome of a trial would have been. *Armstead*, 37 F.3d at 206. In *Lockhart v. Fretwell*, the Supreme Court further refined the test by requiring courts to determine whether counsel's deficient performance, "caused the outcome to be unreliable or the proceeding to be fundamentally unfair," even in cases where a petitioner pleaded guilty. 506 U.S. 364, 372 (1993).

## II. Petitioner's guilty plea

*i. Attorney's representations as to sentence length*

Petitioner claims that his attorney advised him to plead guilty after supplying him with false or misleading information as to the length of sentence he was likely to receive. The plea agreement that Petioner signed, however, explicitly states that:

> In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel... is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court.

(Crim. Docket No. 37 at 4). Thus even if, as Petitioner alleges, his attorney did advise him that his sentence would not likely exceed five years, Petitioner acknowledged in the plea agreement that he understood this to be an estimate.[2] In fact, Petitioner was sentenced to 6 ½ years, near the statutory minimum of five years for his offense and well below the statutory maximum of 40 years (Crim. Docket No. 37 at 2). From the record it is clear that, in regards to this claim, Petitioner can prove no set of facts that would show that his attorney erred in advising him to

---

[2]Petitioner also stated at rearraignment that he understood the plea agreement (Crim. Docket No. 36, transcript at 17).

5

plead guilty. As such this claim fails the first prong of the Strickland/Hill test and should be dismissed. *Shipp v. McMahon,* 234 F.3d 907, 911 (5th Cir. 2000).

ii.   *Failure to investigate*

Petitioner also asserts that his attorney's failure to investigate certain aspects of his case[3] constituted ineffective assistance of counsel. He argues that counsel's investigation was deficient, in part, because he failed to interview Petitioner's co-defendants. He claims that if his co-defendants had been interviewed his attorney would have discovered that Petitioner did not play a supervisory role in the offense. Even assuming, arguendo, that this allegation is true and that it rises to the level of attorney error, Petitioner cannot affirmatively prove prejudice. Petitioner could have easily informed his counsel about his perceived role in the offense. Furthermore, he does not allege that counsel would have discovered any information from his co-defendants that Petitioner was not already aware of or that would have caused him to change his mind about pleading guilty.

Petitioner also alleges that his attorney improperly failed to investigate various matters related to the confidential informant who was used in Petitioner's case. He claims that counsel should have reviewed the informant's agreement with the government, his criminal history, any records of phone conversations between Petitioner and the informant, and that he should have looked into which officials viewed the informant's file. Once again, even assuming that these allegations are true Petitioner cannot affirmatively prove prejudice.

---

[3]Since he pleaded guilty, Petitioner could not have suffered harm *at trial* from his attorney's failure to investigate. The Court assumes then, that Petitioner intended to argue that the alleged failure to investigate affected his decision to plead guilty.

Petitioner's guilt was not based solely on information provided by the confidential informant. Government agents observed Petitioner engaging in the illegal conduct for which he was arrested and ultimately incarcerated (Crim. Docket No. 37). Evidence provided by these agents would have made acquittal highly unlikely. Furthermore, Petitioner has not alleged any specific improper behavior by the confidential informant or given reason why his attorney should have suspected any. As noted above mere allegations of prejudice are not sufficient to qualify a petitioner for habeas corpus relief. *Armstead*, 37 F.3d at 206. Petitioner has not established that he would have insisted on going to trial if his attorney had undertaken a more thorough investigation of the confidential informant.

It is unclear what, if anything, Petitioner's attorney would have learned from interviewing Petitioner's co-defendants or better investigating the confidential informant that would have prevented Petitioner from pleading guilty. Furthermore, the Court is of the opinion that had Petitioner insisted on going to trial he likely would have been found guilty and received a harsher punishment. *Armstead*, 37 F.3d at 206. There is no evidence that Petitioner's attorney did anything which caused the outcome of his case to be unreliable or the proceeding to be fundamentally unfair. *Lockhart*, 506 U.S. at 372. Accordingly, Petitioner can prove no set of facts that would entitle him to relief on this claim and it should be dismissed. *Shipp*, 234 F.3d at 911.

*iii.   Discovery issues*

In this ground of error Petitioner claims that his attorney's failure to make copies of discovery materials available to him deprived him of the ability to enter an informed guilty plea.

Once again, assuming Petitioner's allegations are true, he still has not managed to show that he suffered prejudice from his attorney's acts.

In *Strickland*, the Supreme Court acknowledges that counsel has an obligation "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. What Petitioner appears to assert, however, is that he was entitled to more than consultation. He seems to argue that he was constitutionally entitled to hard copies of the discovery and that his counsel acted deficiently by failing to provide these copies to him. Petitioner does not cite any case law in support of this proposition and the Court could likewise find none. Moreover, Petitioner does not allege that his attorney failed to discuss discovery materials with him. Nor does he explain how having hard copies of the discovery would have caused him to insist on taking his case to trial. Further undermining Petitioner's claim is the fact that during a rearraignment proceeding, prior to pleading guilty, Petitioner explicitly stated that he was satisfied with the services of his attorney. (Crim. Docket No. 36, transcript at 10). Thus the record indicates that Petitioner, even without hard copies of the discovery in his case, understood his situation and wanted to accept the bargain offered by the government. As with Petitioner's prior claims, there is no evidence that Petitioner's attorney did anything which caused the outcome of his case to be unreliable or the proceeding to be fundamentally unfair. *Lockhart*, 506 U.S. at 372. As such, this claim should be dismissed.

### III.     Appeal Issue

In this ground of error, Petitioner claims that he instructed his attorney to file an appeal but that an appeal was never filed. He argues that this failure to file an appeal deprived him of

the effective assistance of counsel. Petitioner, however, waived the right to appeal his sentence in the plea agreement he signed (Crim. Docket No. 37). To be valid, this waiver must have been informed and voluntary. *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994). Additionally, Petitioner must have known that he had a right to appeal his sentence and that he was giving up that right. *Portillo*, 18 F.3d 292. Petitioner's plea agreement facially satisfies these requirements. Page three of the agreement states that "The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, the defendant waives the right to appeal the sentence (or the manner in which it was determined)..." (Crim. Docket No. 37 at 4). Petitioner was informed, therefore, that he had the right to appeal and by entering into the plea agreement he knowingly forfeited that right.

Furthermore, there is no indication that Petitioner did not understand or was confused by the waiver-of-appeal provision of the plea agreement. By signing the agreement Petitioner confirmed that he understood its contents and wished to plead guilty. His attorney certified that he carefully reviewed the plea agreement with Petitioner and explained its import (Crim. Docket No. 37 at 9). Additionally, at rearraignment Petitioner was informed by the presiding judge of his right to appeal[4] (Crim. Docket No. 36).

When the record "clearly indicates that a defendant has read and understands his plea agreement... the defendant will be held to the bargain to which he agreed." *Portillo*, 18 F.3d at 293. Accordingly, Petitioner was barred from appealing his sentence and cannot now collaterally

---

[4]After explaining the concept of an appeal, District Judge Filemon Vela asked Petitioner: "Do you understand your very important right of appeal but that if you plead guilty, you're going to be giving up and waiving that right?" (Crim. Docket No. 36, transcript at 20). Petitioner responded "Yes, sir." *Id.*

attack his sentence through a 28 U.S.C. § 2255 petition in which he alleges ineffective assistance of counsel due to failure to undertake the very appeal he had agreed to forgo. As such, Petitioner can prove no set of facts that would entitle him to relief on this claim and it should be dismissed. *Shipp,* 234 F.3d at 911.

### IV. Sentencing Guideline Issues

In a supplement to his original motion (Docket No. 14), Petitioner claims that the three-level upward adjustment the district court imposed for Petitioner's aggravating role in the offense was improper under the Supreme Court's decision in *Blakely v. Washington,* 124 S. Ct. 2531 (2004). In *Blakely,* the Supreme Court held that sentence enhancements allowed by the Washington Sentencing Reform Act, which were not based on facts admitted by the defendant or found by a jury, violated the Sixth Amendment to the United States Constitution. 124 S. Ct. at 2538. Recently, the Supreme Court extended this holding, in *United States v. Booker,* to invalidate the mandatory provisions of the federal sentencing guidelines. 125 S. Ct. 738 (2004). Though Petitioner filed this action prior to the Supreme Court's holding in *Booker,* the Court will examine the effect, if any, that decisions has on Petitioners claims, since it is now more relevant to Petitioner's case than *Blakely.*

Firstly, the Court notes that cases similar to *Booker* and *Blakely* have been held to not apply retroactively where they are first raised on collateral review. *Schriro v. Summerlin,* 124 S. Ct. 2519, 2525-2526 (2004) (in regards to *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428 (2002)); *United States v. Brown,* 305 F.3d 304, 309-10 (5th Cir. 2002) (per curiam) (in regards to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348 (2000)), cert. denied, 538 U.S. 1007, 123 S. Ct. 1919 (2003). Furthermore, Petitioner's arguments are undermined by the Supreme Court's

10

decision in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989). In that case the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague,* 489 U.S. at 310, 109 S. Ct. at 1075. Both *Booker* and *Blakely* involve new rules of criminal procedure that do not fall within any exception[5] outlined in *Teague*, and as such, neither decision applies retroactively to cases on collateral review. *Teague,* 489 U.S. at 311, 109 S. Ct. at 1075-1076.

Perhaps most damaging to Petitioner's retroactive application claims, however, is the fact that the Supreme Court explicitly states in *Booker* that "we must apply today's holdings -- both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act -- to all cases on *direct review*." 125 S. Ct. at 769 (emphasis added); See also *In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (holding that *Blakely* is not to be applied retroactively). Thus, the Supreme Court did not intend for *Booker* to apply retroactively to convicted defendants in Petitioner's situation.[6] Accordingly, Petitioner can prove no set of facts that would entitle him to relief on this claim and it should be dismissed. *Shipp,* 234 F.3d at 911.

---

[5] A new rule should be applied retroactively only if: (a) it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or (b) it requires the observance of procedures that are implicit in the concept of ordered liberty. Teague, 489 U.S. at 311, 109 S. Ct. at 1075-1076 (quoting Justice Harlan in *Mackey v. United States*, 401 U.S. 667, 692-693 (1970).

[6] Though not binding precedent, the following cases all stand for the proposition that *Booker* should not be applied retroactively: *United States v. Larry*, 2005 U.S. Dist. LEXIS 853, *2-*3 (N.D. Tex. Jan. 19, 2005); *King v. Jeter*, 2005 U.S. Dist. LEXIS 1189, *2 (N.D. Tex. Jan. 27, 2005); *Lindsey v. Jeter*, 2005 U.S. Dist. LEXIS 1385, *5 (N.D. Tex. Jan. 31, 2005); *United States v. Johnson*, 2005 U.S. Dist. LEXIS 1053, *2 (E.D. Va. Jan 21, 2005).

V.     **Evidentiary hearing**

In the instant case the record is clearly adequate to dispose fairly of the Petitioner's allegations. Thus Petitioner's request for an evidentiary hearing should be denied. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).

## RECOMMENDATION

For the aforementioned reasons, Petitioner's application for 28 U.S.C. § 2255 relief (Docket No. 1) and the supplement to Petitioner's application (Docket No. 14) should be DENIED. Furthermore, the Government's Motion to Dismiss (Docket No. 10) should be GRANTED.

## NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

DONE at Brownsville, Texas, this 23rd day of February, 2005.

Felix Recio
United States Magistrate Judge

12